**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | | |
|---|---|---|
| **ASHLEY ARNOLD AND MARTIN** | § | |
| **DEANDA, AS WRONGFUL DEATH** | § | |
| **BENEFICIARIES OF DECEDENT** | § | |
| **CASON LLOYD COLLINSWORTH** | § | |
| **AND ASHLEY ARNOLD AS** | § | |
| **REPRESENTATIVE OF THE** | § | |
| **ESTATE OF CASON LLOYD** | § | |
| **COLLINSWORTH** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. _____** |
| | § | **JURY** |
| **DOREL, INC., DOREL JUVENILE** | § | |
| **GROUP, INC. AND COSCO, INC.** | § | |
| | § | |
| **Defendants.** | § | |

## COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Ashley Arnold and Martin Deanda, as Wrongful Death Beneficiaries of Decedent Cason Lloyd Collinsworth and Ashley Arnold as Representative of the Estate of Cason Lloyd Collinsworth complaining of Dorel, Inc., Dorel Juvenile Group, Inc. and Cosco, Inc., and would respectfully show the Court as follows:

## PARTIES

1.      Plaintiff Ashley Arnold is an adult, a resident of Houston County, Texas, and is the natural mother of Cason Lloyd Collinsworth.

2.      Plaintiff Martin Deanda is an adult, a resident of Anderson County, Texas, and the natural father of Cason Lloyd Collinsworth.

3.      Defendant Dorel, Inc., a Dorel Company was, at all relevant times, a foreign corporation organized and existing according to the laws of the State of Indiana with its principal

offices being in Columbus, Indiana.  Service of process may be served upon this Defendant by serving its registered agent for service, CT Corporation System, 36 S. Pennsylvania Street, Suite 700, Indianapolis, Indiana 46204.

4.     Defendant Dorel Juvenile Group, Inc., ("DJG"), is a foreign corporation organized and existing according to the laws of the State of Indiana with its principal offices in Columbus, Indiana. Defendant DJG regularly conducts substantial and continuous business in the State of Texas, Houston County and the Eastern District of Texas, and its products, including the booster seat involved in this case, were designed, developed, tested, evaluated, manufactured, assembled, labeled, marketed, advertised, sold and distributed for and to consumers in the State of Texas, Houston County and the Eastern District of Texas.  DJG has, therefore, submitted itself to the jurisdiction of this Court and venue is proper. Service of process may be served upon Defendant DJG by serving its registered agent for service, David Taylor, 2525 State Street, Columbus, Indiana 47201.

5.     Defendant Cosco, Inc., a Dorel Company was, at all relevant times, a foreign corporation organized and existing according to the laws of the State of Indiana with its principal offices being in Columbus, Indiana.  Defendant Cosco merged with an entity known as Safety First, Inc. and the alleged successor corporation is known as Dorel Juvenile Group, Inc. (DJG). Defendant DJG is a foreign corporation organized and existing according to the laws of the State of Indiana with its principal offices in Columbus, Indiana.  As a result of the merger, DJG assumed and has control over all assets that were previously the property of and under the control of Cosco, Inc., including all documents and other tangible items. Moreover, the merger resulted in the complete assumption by DJG of any and all liabilities for any and all acts, omissions and/or conduct of Cosco, Inc. that occurred prior to the merger. Defendant Cosco

regularly conducts substantial and continuous business in the State of Texas, Houston County and the Eastern District of Texas, and its products, including the booster seat involved in this case, were designed, developed, tested, evaluated, manufactured, assembled, labeled, marketed, advertised, sold and distributed for and to consumers in the State of Texas, Houston County and the Eastern District of Texas.  Cosco has, therefore, submitted itself to the jurisdiction of this Court and venue is proper.  Service of process may be served upon this Defendant by serving its registered agent for service, Jonathan P. Reynolds, 2525 State Street, Columbus, Indiana 47201. As a result of the aforementioned merger, Defendants Dorel, Inc., Dorel Juvenile Group, Inc. and Cosco, Inc., for purposes of this Complaint, will hereafter be identified collectively as "Cosco."

## JURISDICTION AND VENUE

6.      Jurisdiction is proper in this Court pursuant to 28. U.S.C. section 1332. Plaintiffs and Defendants to this action are of diverse citizenship. The amount of controversy exceeds $75,000.00 exclusive of interests and costs.

7.      Venue is proper in this Court. Plaintiff Ashley Arnold is a resident of Houston County, Texas which is within this judicial district, and many of the acts and/or occurrences giving rise to the injuries of Plaintiffs occurred in the State of Texas within this judicial district.

## PROCEDURAL AND FACTUAL BACKGROUND

8.      Plaintiff Ashley Arnold purchased the Cosco safety seat at issue for the specific use and benefit of all Plaintiffs, including and specifically for Cason, at a Wal-Mart store within the judicial district of the Eastern District of Texas.

9.      The subject Cosco seat is identified as Model Number 22209WAL, Serial Number B771639 manufactured on September 13, 2006.

10.      The child seat was designed, tested, manufactured, packaged, labeled and

marketed by Cosco.  Cosco is a "manufacturer" of the safety seat as defined in Chapter 82.001(4) of the Texas Civil Practices and Remedies Code.

11.     On or about December 8, 2008, Cason Lloyd Collinsworth ("Cason"), was according to the information provided by Cosco, the proper size and weight to use the Cosco seat – he weighed approximately forty-seven pounds and was forty inches in length.  On that date Cason was restrained in the second row seat on the driver's side of the Ford Expedition being driving by Ashley Arnold.  Cason was using the Cosco seat in a reasonably anticipated, expected and foreseeable manner when the Expedition was involved in a frontal collision.

12.     The subject Cosco seat was in the same condition just prior to the collision as it was when it was sold by Cosco.

13.     Cason's occupant space inside the Expedition was preserved and intact throughout and after the collision – it was more than adequate to allow for an occupant of Cason's size to safely ride down the crash forces present in the collision without sustaining serious injury, had Cason been restrained in a properly designed child safety seat.

14.     The Cosco seat was defective and unreasonably dangerous in that it was not adequately designed, tested, manufactured, packaged, labeled or marketed to minimize the risk of injury or death or to provide safe and effective restraint to children.  By way of example and without limitation, the Cosco seat was defective and unreasonably dangerous in the following ways:

> a.     The Cosco seat failed to prevent shoulder rollout, belt slippage and slack, and/or submarining;
>
> b.     The Cosco seat failed to provide adequate upper torso and pelvic restraint and/or to adequately distribute crash loads;
>
> c.     The Cosco seat failed to comply with the minimum federal standard, FMVSS 213 in that it was labeled as being appropriate for children who

were too small to safely use it;

d.  The testing performed by Cosco on the Cosco seat was woefully inadequate and insufficient to provide a reasonable assurance that the seat complied with the applicable federal standard or would provide safety to young children in foreseeable collisions or crashes;

e.  The testing that Cosco did perform or otherwise knew of, made it clear that the design of the Cosco seat was flawed and that a loss of restraint was inevitable in foreseeable crashes – yet Cosco did nothing to investigate these test failures, determine their cause and eliminate the cause of the failures;

f.  The design of the Cosco seat failed to incorporate any margin of safety to allow for factors such as, for example, tolerances, variances, environmental effects and foreseeable loading conditions.

15.  Because of the Cosco seat's defective and unreasonably dangerous condition, the Cosco seat failed to properly restrain Cason causing catastrophic and ultimately fatal injuries.

16.  Safer alternative designs existed at the time of the Cosco seat's design, manufacture, at the time of its sale and at the time of the accident, any one of which would, in reasonable probability, have prevented the injuries to Cason.  These alternative designs were both economically and technologically feasible at all relevant times by the application of existing scientific knowledge.

17.  In addition to the defects outlined above, Cosco also failed to provide adequate warnings and information regarding the unreasonably dangerous design of the safety seat.  In this regard, and prior to the date of the accident at issue in this case, various governmental and non-governmental safety organizations in North America with significant expertise in child transportation safety issues recommended against using Cosco seats for children who had not yet outgrown seats with integrated harnesses and, further, identified the dangers and risks of using these products.  Some of the information and recommendations that were available and actually known to Cosco include the following:

a.      In 1974, Dr. Richard Stalnaker published an SAE paper entitled "Tests of Current and Experimental Child Restraints Systems." Dr. Stalnaker stated in his journal article that "The single most important measure of the injury protection afforded by a restraint system . . . is the extent to which it limits head excursion in all directions."

b.      In 1989, the American Academy of Pediatrics issued "1989 AAP Car Safety Guidelines." The guidelines recommended keeping a child in a seat with integral harness "for as long as possible."

c.      In January 1989, NHTSA published a "Consumer Information" brochure. The brochure stated that caregivers should "keep children in convertible or toddler seats as long as they will fit."

d.      In 1990, the AAP issued its "1990 AAP Car Safety Guidelines." The AAP recommended keeping a child in a seat with an integral harness "for as long as possible."

e.      Also in 1990, the DOT and NHTSA issued their "Shopping Guide for Child and Infant Safety Seats." The government recommended keeping a child in a seat with integral harness "as long as they will fit." These same recommendations and warnings were provided again by NHTSA in a May 1990 "Buckle-Up America" campaign brochure.

f.      In March 1992, NHTSA published the "Child Passenger Safety Resource Manual." Numerous comments were made in the Manual regarding the proper use of Cosco seats, including the statement that "Cosco seats are intended to be used as a transition to safety belts by older children who have outgrown convertible seats" and that "parents should be advised to keep their children in a convertible seat as long as they will fit . . ."

g.      In the Spring of 1994 Safe Ride News newsletter, the AAP stated in the "Belts, Boosters and Kids" section that parents needed to keep their children in seats with integrated harnesses "as long as it fits" and that a "restraint with shoulder straps and a shell is usually more protective that a Cosco seat."

18.     All of the information contained in paragraph 17 was actually known to Cosco prior to the time Cason's safety seat was sold.  Nevertheless, when Cosco sold the seat; it failed to provide any of this information to the public or to the users and consumers of the seat, and they failed to warn the public and the users and consumers of the safety seat about the inherent dangers in using the seat with children would be better protected in seats with full harnesses.

19.     Cosco failed to provide any of the information contained in paragraph 17 above to Ashley Arnold at any time prior to or after the purchase of the Cosco seat and they failed to warn or provide information to Ashley Arnold of the dangers inherent in using the child seat with children in Cason's height and weight range.  Had any of this information been provided, Ashley Arnold would not have purchased the Cosco seat and would never have used it.  Cosco's failures in this regard resulted in defects in the Cosco seat's labeling, marketing, instructions, warnings and other informational materials including but not limited to the following:

a.      The Cosco seat failed to provide adequate warnings, instructions and information regarding the use of the seat with children in certain weight and height ranges, and on how to select a safety seat that would provide reasonable and adequate protection to children in foreseeable crashed based on a child's height and weight.

b.      The advertising, marketing, sales, point of sale, and other related and similar information that was on the box containing the Cosco seat, in the box, and on the seat itself and at the point of sale failed to provide adequate warnings, instructions and information regarding the use of the seat with children in certain weight and height ranges and on how to select a safety seat that would provide reasonable and adequate protection to children in foreseeable crashes based on a child's height and weight.

c.      The warnings and instructions that were provided with and on the Cosco seat were incomplete, inaccurate, concealed the limitations of the seat, failed to provide appropriate and accurate information regarding the minimum height and weight of children who could safely occupy the seat, failed to convey the risks associated with the use of the seat by children who did not weigh enough or were not tall enough to safely use the seat, and otherwise failed to convey information necessary to the safe use of the seat.

d.      The advertising, marketing, sales, point of sale, and other related and similar information that was on the box containing the Cosco seat, in the box, on the seat itself and at the point of sale were incomplete, inaccurate, concealed the limitations of the seat, failed to provide appropriate and accurate information regarding the minimum height and weight of children who could safely occupy the seat, failed to convey the risks associated with the use of the seat by children who did not weigh enough or were not tall enough to safely use the seat, and otherwise failed to convey information necessary to the safe use of the seat.

20.     Prior to December 8, 2008, Cosco sold a Cosco seat to Ashley Arnold.  Ashley Arnold was induced to purchase the seat because of numerous implied and express promises, representations, assurances and/or affirmations that were given to them by Cosco, including but not limited to the following.

    a.      She believed that Cosco was a trustworthy company with expertise in the design, labeling and use of child safety seats, that she could confide in and rely upon the company when selecting and using a safety seat for Cason, and that if any information critical to the safe use of the product was known to Cosco, it would be provided;

    b.      The Cosco seat was in fact a safety seat and that it would provide safety to Cason in automobile crashes;

    c.      The Cosco seat would provide effective restraint for Cason in automobile crashes;

    d.      She believed the Cosco seat was suitable, safe and appropriate for children in Cason's weight and height range;

    e.      She believed that Cosco knew or had reason to know of, the particular purpose for which they intended to use the safety Cosco seat, and they relied on Cosco's skill, expertise, testing, evaluation and judgment to select, advertise and furnish a safety Cosco seat that would be suitable for use by Cason.

21.     Prior to December 8, 2008, Cosco concealed and otherwise failed to disclose any of the following facts:

    a.      That it *knew* shoulder rollout, belt slippage and slack, and/or submarining were likely results of certain foreseeable collisions;

    b.      That it *knew* at the time the Cosco seat at issue was sold that various governmental and non-governmental safety organizations in North America with significant expertise in child transportation safety issues recommended against using a Cosco seat for a child who had not yet outgrown safety seats that contained integrated harness systems, all as more fully set forth above;

c.     That it *knew* the Cosco seat would not provide effective restraint for Cason in automobile crashes, especially in crashes involving front impacts, lateral forces and rollovers;

d.     That it *knew* the Cosco seat would not adequately protect a child who could not yet utilize an automobile's seatbelt system during a collision and that it could actually enhance injuries to such children in that its design permitted and encouraged (i) excessive upper torso movement and head excursion, (ii) head impact with the interior of the automobile, (iii) abdominal injuries, and (iv) partial ejection of the child from the seat.

22.    At all relevant times, Ashley Arnold did not have any actual or constructive knowledge of the facts alleged above.  At the same time, Cosco knew or had reason to know that these and other similarly situated persons lacked such knowledge and that they would not realize the dangerous propensities of the Cosco seat, particularly in the face of attention grabbing point of purchase information that conveyed the message that the Cosco seat provided safety and was unquestionably suitable for children such as Cason.

23.    None of the information, statements or recommendations set forth above were on, with or near the Cosco seat that were on sale in the store where this seat was purchased by Ashley Arnold.

24.    On or about September 14, 1999, nine years before Cason's catastrophic and ultimately fatal injuries, the Administrator of NHTSA, Ricardo Martinez, M.D., sent a letter to Cosco which stated, among other things, the following:

a.     As a key protective device for our Nation's children, child restraints must be designed and constructed with the highest levels of safety in mind.

b.     Our review of NHTSA's compliance test results during the past few years indicates that many restraints have been engineered to barely comply with some of the most safety-critical requirements of the standard, rather than being designed with larger compliance margins.

c.     With the safety of our Nation's children at issue, mere compliance with the minimum requirements of the standard is not enough; minimum

standards should not be the most in safety design that manufacturers provide.

d.    When products are engineered with narrow compliance margins, the level of safety risk increases, even if the product is in technical compliance with the minimum standard.

e.    I am urging each manufacturer of child restraints to ensure that these restraints perform well beyond the minimum requirements of our standard. American families expect, and deserve, no less.

f.    It is up to the manufacturers of these critically important safety devices to take on the responsibility of maximizing child safety in all respects.

25.    Cosco received and read the letter from Ricardo Martinez, M.D. referred to in the preceding paragraph before December 8, 2008.

26.    Between the time Cosco received and read the letter from Ricardo Martinez, M.D. referred to above (on or about September 14, 1999) and the accident on December 8, 2008 that resulted in Cason's catastrophic and ultimately fatal injuries because of the inability of the Cosco seat to protect him, Cosco did nothing whatsoever to change either the design, warnings or labeling of the Cosco seat to "ensure that these restraints perform well beyond the minimum requirements of the standard," did nothing to ensure that the seat had been "designed and constructed with the highest levels of safety in mind" or to "maximize child safety in all respects," nor did it provide any of the information contained in the above paragraphs to the general public.  Instead, it kept marketing and selling the Cosco seat as being a "restraint device" that would "ensure the safety" of children.

27.    Between the times Cosco obtained the knowledge set forth in the paragraphs above and the collision on December 8, 2008 that resulted in Cason's catastrophic injuries from his safety seat, Cosco did nothing whatsoever to change the design, testing, manufacturing, labeling, warning or marketing of the Cosco seat.

28.     On December 8, 2008, Cason was a minor under the age of seven.  As a result, it is conclusively presumed that he was incapable of contributory or comparative negligence, or fault of any kind.

29.     As a result of the defective design of the Cosco seat, failure to warn and Defendant Cosco's conduct, Cason sustained massive abdominal injuries that ultimately resulted in his premature death.

## COUNT I:  STRICT LIABILITY

30.     Plaintiffs incorporate and reallege the foregoing paragraphs of this Complaint as if fully set forth herein.

31.     Defendant Cosco was, at all relevant times, engaged in the business of labeling, packaging, marketing, selling, advertising, warning and otherwise distributing and placing in the stream of commerce the Cosco seat at issue in this lawsuit. In addition, Cosco was in the business of researching, developing, designing, testing, producing, assembling and manufacturing the Cosco seat.  These transactions were essentially commercial in nature.

32.     Ashley Arnold, on behalf of Cason and for the direct benefit and use of the Plaintiffs, purchased the Cosco seat.

33.     The Cosco seat at issue herein reached Plaintiffs and Cason, the ultimate users and consumers of the product, without any substantial change in its condition from the time it was placed into the stream of commerce by Cosco.

34.     The Cosco seat, when it reached Plaintiffs and Cason, was in a condition that was unreasonably dangers to the ultimate user or consumer taking into consideration the utility of the seat and the risks involved in its use.  The Cosco seat was dangerous to an extent beyond that which would be contemplated by the ordinary user or consumer who purchased it with the

ordinary knowledge common to the community as to the product's characteristics. The Cosco seat safety seat was defective and unreasonably dangerous to Cason and other consumers or users by reason of defects in design, manufacture, assembly, inspection, marketing, misrepresentation, failure to warn, labeling and testing, including but not limited to the following:

a.      the Cosco seat did not adequately protect a child during a frontal impact, including the failure of the seat to provide proper (i) upper torso restraint, and (ii) pelvic restraint;

b.      the Cosco seat did not adequately protect a child during a frontal impact and it enhanced injuries in that its design permitted and encouraged (i) excessive upper torso movement and head excursion, (ii) excessive pelvic excursion; (iii) head impact with the interior of the automobile or Cosco seat itself, (iv) complete or partial ejection of the child from the seat, (v) excessive abdominal loading, and (vi) abdominal injuries and death;

c.      the Cosco seat and its accompanying packaging, literature and labels failed to warn or give adequate warnings, instructions or information to Plaintiffs and other consumers or users of (i) the defective and unreasonably dangerous nature of the safety seat; and/or (ii) any of the information contained in paragraphs set forth above;

d.      the Cosco seat was not crashworthy in its design and was inadequate to reasonably protect a child occupying it from foreseeable crash forces in the event of an automobile collision;

e.      the Cosco seat lacked adequate and sufficient warnings, including post-sale warnings and instructions about the risks, dangers and harms presented by the Cosco seat and reasonable means to reduce such risks, dangers and harms;

f.      the Cosco seat was not crashworthy in its design and manufacture;

g.      the Cosco seat was incapable of providing protection to children occupying it in a foreseeable collision;

h.      the Cosco seat was not safe for its intended and foreseeable use;

i.      the Cosco seat lacked all elements necessary to make it safe;

j.      the Cosco seat contained elements which made it unsafe; and

k.      Cosco misrepresented the safety of the Cosco seat.

35.      The Cosco seat was defective and unsafe for its intended purposes at the time of its design, testing, manufacture, marketing and sale by Cosco.  The product was defectively designed, defectively tested, defectively manufactured, defectively labeled, defectively marketed, and unreasonably dangerous to Plaintiffs and Cason in that the design, testing, manufacture, labeling and marketing of the safety seat made it unsafe and dangerous for numerous reasons, including but not limited to the reasons set forth above.

36.      At the time the subject Cosco seat left the possession of Cosco, there were safer alternative designs that could have been used in the subject Cosco seat, any one of which would have significantly improved the safety seat's crashworthiness and thereby prevented or significantly reduced the risk of injury that resulted in Plaintiffs' damages without substantially impairing the safety seat's utility. These alternative designs were both economically and technologically feasible by the application of existing or reasonably achievable scientific knowledge at the time the subject Cosco seat left the control of Cosco.

37.      The death of Cason and Plaintiffs' damages were a direct and proximate result of, and were produced by, the product's defective and unreasonably dangerous condition as more fully described above.

38.      As a direct and proximate result of the Cosco's designing, testing, manufacturing, labeling and packaging, marketing, selling, advertising, warning and otherwise distributing and placing in the stream of commerce the Cosco seat at issue in this lawsuit, Cason suffered catastrophic and ultimately fatal injuries.

39.     Plaintiffs further alleged that such defects in the design, testing, manufacture, labeling, use instructions and marketing of the Cosco seat, singularly or in combination, were a producing cause of Plaintiffs' injuries and damages.

## COUNT II:  NEGLIGENCE

40.     Plaintiffs incorporate and reallege the foregoing paragraphs of this Complaint as if fully set forth herein.

41.     Cosco had a duty to exercise reasonable care in designing, testing, developing, manufacturing, labeling, packaging, supplying, marketing, selling, advertising, warning and otherwise distributing and placing in the stream of commerce the Cosco seat at issue in this lawsuit.

42.     Cosco failed to exercise reasonable care in designing, testing, developing, manufacturing, labeling, packaging, supplying, marketing, selling, advertising, warning and otherwise distributing and placing in the stream of commerce the Cosco seat at issue in this lawsuit given the seat's defective and unreasonably dangerous conditions as described above.

43.     Cosco had a duty, once it learned of any potential problems with the Cosco seat, to perform an adequate inquiry and to ensure that other Cosco seat safety seats were not designed, tested, developed, manufactured, labeled, packaged, supplied, marketed, sold, advertised, contained warnings or otherwise distributed and placed in the stream of commerce in the same way.

44.     Cosco had a duty, once it learned of any potential problems with the Cosco seat to adequately notify users and consumers of the hazards and risks associated with the Cosco seat.

45.     Cosco knew, or should have known, that the Cosco seat was defective, unsafe and not crashworthy.

46.     Cosco knew, or should have known, that the defects associated with the Cosco seat created an unreasonable risk of bodily harm to anyone using the product.

47.     Cosco knew, or should have known by the exercise of reasonable care, that the Cosco seat was not crashworthy, and that passengers in vehicles such as Cason would, in the ordinary course of events, use and be exposed to the dangers and defects contained in the Cosco seat.

48.     Despite the fact that Cosco knew, or should have known, that the Cosco seat could cause serious and life threatening injuries to anyone who used it, Cosco took inadequate steps to notify consumers of this danger and to prevent the safety seat from being used by children like Cason.

49.     Cosco, knew, or should have known, that it was foreseeable that children, such as Cason, would suffer injuries as a result of Cosco's failures to exercise ordinary care as set forth herein.

50.     The negligence of the Cosco entities was a proximate cause of the injuries of Plaintiffs.

51.     The negligence of the Cosco entities was a producing cause of the injuries of Plaintiffs.

## COUNT III:  UNFAIR AND DECEPTIVE ACTS

52.     Plaintiffs incorporate and reallege the foregoing paragraphs of this Complaint as if fully set forth herein.

53.     Plaintiffs are consumers under the Texas Deceptive Trade Practices Act "DTPA" because Plaintiffs are individuals who acquired goods from another person that were purchased by that other person specifically for Plaintiffs' use and benefit.

54.     The Cosco entities are corporations that can be sued under the DTPA.

55.     Cosco violated the DTPA when they collectively, or individually:

    a.     Cosco engaged in false, misleading or deceptive acts in the course of selling the Cosco seat. More specifically, Cosco advertised, warranted, promised and assured Plaintiffs, through the goodwill and generally trustworthy nature of their business, and through the advertising, marketing, labeling point of sale materials and other written information in and on the Cosco seat, that, among other things, (i) the safety seat would provide safety and restraint to children in foreseeable collisions; (ii) the Cosco seat was in fact a "safety seat" and that it would in fact provide safety to children in foreseeable collisions; (iii) all information that a caregiver or parent would need to make a reasonable, informed and intelligent decision about purchasing a safety seat – a product sold and purchased for the sole purpose of providing crash protection to children in automobile accidents – had in fact been provided by Cosco; (iv) crucially important information and recommendations regarding the size and weight of children who could safely use the Cosco seat would not be concealed from Plaintiffs, would not be withheld from Plaintiffs and would, in fact, be fully disclosed to Plaintiffs; and (v) the Cosco seat had characteristics and benefits – that would provide safety to children in foreseeable automobile collisions – when they knew full well that for children in certain height and weight ranges, there were much better and safer alternatives available that would, in fact, provide such characteristics and benefits.

    b.     Defendants had this and other information available to them at the time the Cosco seat was sold, yet Defendants consciously and deliberately concealed this information from Plaintiffs and from Ashley Arnold, knowing full well that their concealment of this information would induce Ashley Arnold to purchase the Cosco seat to be used with Cason.  Had the information set forth above been provided or otherwise disclosed by Defendants, Ashley Arnold would have not purchased the Cosco seat and Plaintiffs would never have allowed it to be used with Cason.

    c.     The information that was concealed as set forth herein was in fact being concealed, deliberately, so that Defendants could sell the Cosco seat to consumers like the Arnolds - a product they did not need, was not safe, would not provide restraint and was otherwise defective, all for the sole purpose of making more money for Defendants.

56.     Cosco engaged in unconscionable actions, or a course of action, that, to Plaintiffs' detriment, took advantage of the lack of knowledge, ability, experience or capacity of Plaintiffs

and Ashley Arnold to a grossly unfair degree.  Specifically, Cosco knew full well that the name "Cosco" which capitalized on the use of slogans like "Dedicated to helping provide a safer world for children," was accepted by consumers as a well-known and established company that provided good quality, safe, suitable and otherwise adequate products for parents to buy for their children and that information regarding the safe use of its baby products, especially those that supposedly provided safety, would be disclosed, and Defendants knew that consumers trusted the name "Cosco."   Knowing this, Cosco made the conscious, deliberate marketing decision to misrepresent the level of safety that the Cosco seat could provide to children in certain weight ranges and concealed a massive amount of information that made it very clear that, at least for children in certain height and weight ranges, products other than the Cosco seat could and would provide the safety that the Cosco seat lacked in foreseeable automobile collisions.  Cosco took advantage of Cosco's name and trustworthy reputation and deliberately used that reputation to its advantage in the sale of the Cosco seat at issue in this case.

57.     Cosco breached express and implied warranties with respect to the Cosco seat. More specifically, Cosco warranted that the Cosco seat (i) was fit for the ordinary purpose for which it was to be used, (ii) was fit and suitable for the particular purpose for which it was sold, (iii) was adequately contained, packaged and labeled, and (iv) conformed to the promises or affirmations of fact made on the seat, the labeling, the instructions, the box and other literature that accompanied the seat when it was sold.  When it was sold by Cosco, the Cosco seat and its associated packaging, labeling and advertising materials contained numerous affirmations of fact or promises which related to the seat.  These affirmations and promises had the natural tendency to induce a buyer to purchase the seat and did, in fact, induce Ashley Arnold to purchase the seat and further induced Plaintiffs to use the seat with Cason. Thus, the affirmations and promises

became part of the basis of the bargain, creating an express warranty that the seat would conform to the affirmations and promises made.  The seat did not, however, comply with any of these warranties and failed to conform to the affirmations and promises made by Cosco in that it was sold in violation of the DTPA as more fully set forth above.

58.     It was impracticable for Plaintiffs to give Cosco written notice under Texas Business & Commerce Code § 17.505(a) because Plaintiffs needed to file suit in order to prevent the potential expiration of the statute of limitations on certain of Plaintiffs' claims.

59.     Cosco's wrongful conduct, individually or collectively, was a producing cause of Plaintiffs' injuries as more fully set forth above.

60.     Plaintiffs seek recovery of unliquidated damages within the jurisdictional limits of the Court, as well as all statutory damages to which they are entitled.

61.     Cosco also acted knowingly and intentionally in their conduct and actions with the specific intent that Plaintiffs act in detrimental reliance on Cosco's falsity or deception, or in the detrimental ignorance of Cosco's unfairness.  Accordingly, Plaintiffs are entitled to recovery treble damages under Texas Business & Commerce Code § 17.50(b)(1).

62.     Plaintiffs also seek their reasonable and necessary attorneys fees and costs in prosecuting this suit under the Texas Business & Commerce Code § 17.50(d).

63.     All conditions precedent to Plaintiffs' claims for relief have been performed or have occurred or Plaintiffs are excused from performance under the circumstances.

## COUNT IV:  BREACH OF EXPRESS AND IMPLIED WARRANTY

64.     Plaintiffs incorporate and reallege the foregoing paragraphs of this Complaint as if fully set forth herein.

65.     The Cosco seat was subject to an implied warranty of merchantability and an implied warrant of fitness for a particular purpose when it was sold by Cosco, including but not limited to warranties that it (i) was fit for the ordinary purpose for which it was to be used, (ii) was fit and suitable for the particular purpose for which it was sold, (iii) was adequately designed, tested, assembled, manufactured, contained, packaged and labeled, and (iv) conformed to the promises or affirmations of fact made on the seat, the labeling, the instructions, the box and other literature that accompanied the seat when it was sold.

66.     When it was sold by Cosco, the Cosco seat and its associated packaging, labeling, and advertising materials contained numerous affirmations of fact or promises which related to the seat. These affirmations and promises had the natural tendency to induce a buyer to purchase the seat and did, in fact, induce Ashley Arnold to purchase the Cosco seat and further induced Ashley Arnold and Plaintiffs to use the seat with Cason.  Thus, the affirmations and promises became part of the basis of the bargain, creating an express warranty that the seat would conform to the affirmations and promises made.

67.     The Cosco seat did not comply with any of these warranties and failed to conform to the affirmations and promises made by Cosco.

68.     At the time of the accident, the Cosco seat was being put to the use for which it was placed into the stream of commerce by Cosco.

69.     Plaintiffs' injuries and losses as set forth above were proximately caused by the use of the Cosco seat and the breaches of the expressed and implied warranties set forth above.

70.     Plaintiffs' injuries and losses as set forth above are the kind of losses and damages that were contemplated or foreseeable to Cosco at the time the Cosco seat was sold.

71.     Plaintiffs reserve the right to supplement or amend any of their claims for relief herein.

## JURY DEMAND

72.     Plaintiffs demand a trial by jury.

## DAMAGES

73.     Plaintiffs Ashley Arnold and Martin Deanda are the statutory beneficiaries of Decedent Cason Lloyd Collinsworth and are entitled to bring an action for his death.  Plaintiffs bring this suit, in part, pursuant to Texas Civil Practices and Remedies Code §§ 71.002-004, commonly referred to as the "Wrongful Death Act," and pursuant to the terms and provisions of Texas Civil Practices and Remedies Code § 71.021, known as the "Survivor's Act," and any and all other applicable laws including the common law of the State of Texas.

74.     Ashley Arnold is the natural mother of Cason Lloyd Collinsworth.

75.     Martin Deanda is the natural father of Cason Lloyd Collinsworth.

76.     As a direct and proximate result of the conduct of Cosco, Cason Lloyd Collinsworth died.  Plaintiffs Ashley Arnold and Martin Deanda seek to recover a sum of money that would fairly and reasonably compensate them for the termination of the parent-child relationship, including the loss of the love, comfort, companionship and society that they would, in reasonable probability, have received from their son had he lived.  Plaintiffs also seek compensation for the emotional pain, torment and suffering that they have suffered, and in reasonable probability will continue to suffer, in connection with the wrongful death of their son, Cason Lloyd Collinsworth.  Additionally, Plaintiff Ashley Arnold has incurred and is entitled to recover the expenses of Decedent's funeral, medical expenses and compensation for the

suffering Cason Lloyd Collinsworth was caused to endure from the injuries he received in the accident made the basis of this lawsuit until the time of his death.

77.     It is not possible for Plaintiffs Ashley Arnold and Martin Deanda to plead the exact amounts of these damages at this time, but the amount clearly exceeds seventy-five thousand dollars ($75,000.00) and the minimal jurisdictional limits of this Court.  All conditions precedent to bringing this action have occurred or been performed.

78.     Plaintiffs Ashley Arnold and Martin Deanda would additionally say and show that they are entitled to recover pre-judgment interest in accordance with law and equity as part of the damages herein, and they here and now sue for recovery of pre-judgment interest as provided by law and equity under the applicable provisions of the laws of the State of Texas.

79.     Plaintiffs Ashley Arnold and Martin Deanda specifically reserve the right to amend their pleadings for an amount certain in the future, but their damages already exceed the minimum jurisdictional limits of this Court.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Ashley Arnold and Martin Deanda pray that Defendants be cited to appear and answer herein, that upon final trial, they have judgment against Cosco, jointly and severally, for (1) actual and punitive damages in accordance with the evidence; (2) pre-judgment and post-judgment interest as provided by law; (3) costs of suit; (4) attorneys' fees; (5) and such other and further relief to which they may be justly entitled at law and in equity.

Respectfully submitted,

DENENA & POINTS, P.C.

/s/ **Chad D. Points**

Chad D. Points
State Bar No. 24007854
1776 Yorktown, Suite 340
Houston, Texas  77056
713.807.9500
713.337.9520 (Telecopier)
cdp@denenapoints.com

ATTORNEY FOR PLAINTIFFS